## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

NATHAN AVERY ROACH,          )
                                   )
             Plaintiff,          )
                                   )
v.                                   )          CV422-299
                                   )
LIBERTY COUNTY JAIL, *et al.*,    )
                                   )
            Defendants.       )

## <u>ORDER AND REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Nathan Avery Roach filed this 42 U.S.C. § 1983 case, seeking to recover damages arising from various alleged constitutional violations at Liberty County Jail. *See* doc. 1. The Court granted him leave to proceed *in forma pauperis*, doc. 3, and he returned the required forms, docs. 4 & 5. The Court must, therefore, screen his Complaint pursuant to 28 U.S.C. § 1915A. Although his Complaint fails to state a claim upon which relief may be granted, *see* 28 U.S.C. § 1915A(b)(1), he will have an opportunity to amend it.

Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the

Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As Roach is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

Roach's claims against several defendants can be resolved with dispatch. Liberty County Jail is not a proper defendant. Jails and prisons are not entities subject to suit under § 1983. *See, e.g., Williams v. Chatham Cty. Sheriff's Complex*, 2007 WL 2345243, at *1 (S.D. Ga. Aug. 14, 2007) ("The county jail . . . has no independent legal identity and therefore is not an entity that is subject to suit under § 1983."). Accordingly, to the extent that Roach asserts claims against Liberty County Jail, it should **DISMISSED**. He also asserts that several defendants are liable based solely on their supervisory role. Specifically, he alleges that defendants McEady and Krumnow "failed to provide humane conditions," doc. 1 at 11-12, based on their supervisory responsibilities, *see id.* at 6. Section 1983 does not support such claims.

*See Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014) (citing *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) ("Section 1983 claims may not be brought against supervisory officials solely on the basis of vicarious liability or *respondeat superior*."). His claims against McEady and Krumnow, in their supervisory capacities, should therefore also be **DISMISSED**.

Roach's factual allegations include allegations that "multiple constitutional rights and[/]or multiple human rights have been continuously violated . . . ." Doc. 1 at 7. The first section of his factual allegations contains a continuous narrative beginning when he slipped and fell on loose debris. *See id*. After he fell, he alleges that he suffered a "seizure or stroke." *Id.* at 7. He was placed in a wheelchair, "briefly examined," and then placed in a cell "with a camera," for some period of time and then moved to "a room without a camera." *Id.* In the second cell, he alleges that he suffered another "seizure or stroke." *Id.* Several staff members, including "medical staff Dixon," arrived and moved him again. *Id.* at 8. He alleges that he was "unable to move [his] left arm and left leg and struggle[ed] to breathe." *Id.* He alleges that defendant Barnes observed him several times in that position, and refused to

provide medication, including a "breathing treatment." *Id.* at 9.  Later, he alerted a nurse to the "knots on [his] head" from the fall.  *Id.* at 10.  She stated that she "didn't see that before," and sent him for further medical examination.  *Id.*

In a separate section of the Complaint, Roach includes numerous allegations of unconstitutional conditions.  First, he alleges that he slipped and fell on spilled juice. Doc. 1 at 15.  After he fell, he was "denied [a] medical mat 'thicker mat' . . . ."  *Id*.  He complained about "pain" and "numbness in [his] legs" on various dates after that fall.  *Id*.  He alleges that he complained about a lack of running water in a "medical cell," and the fact that the toilet in the cell overflows.  *Id*.  He alleges he was denied "therapy" for back pain.  *Id*.  He objects that he was forced to serve "work release . . . while in pain from previous incidents."  *Id*.  He alleges that he was denied a request to "contact an attorney."  *Id*.  He alleges that a "shower chair" broke and he fell.  *Id*.  He objects that he was placed in a "suicide cell" that contained feces.  *Id*. at 16.  He alleges that "physicians failed to adequately treat" him after his fall discussed above.  *Id*.  He alleges that a "[p]ostcard addressed to Internal Affairs" was refused for mailing.  *Id*.  He alleges he was denied unspecified "PM medication."  *Id*.

He alleges that he was not provided with food at the time he was required to take medication that must be taken with food, resulting in vomiting. *Id.* at 17.  He alleges that he was denied "breathing treatments." *Id.*  He alleges another fall "coming out of the shower," and that an unidentified officer refused his requests for immediate medical attention. *Id.*  He, again, alleges that he was denied "breathing treatment, after what was assumed to be an asthma attack." *Id.* at 18.  He, again, alleges that he is denied his "right to speak with and or contact an attorney." *Id.*  He also alleges that he is "denied store order sheets, to order mailing items, to write attorney." *Id.*  Finally, he alleges that he complained to McEady about his lack of access to a phone. *Id.*

Roach's various allegations concerning his falls fail to state any claim upon which relief can be granted.  Section 1983 simply cannot be used to bring a negligence-based tort suit in federal court,[1] and even read most charitably, his allegations that he slipped on debris, spilled juice, or stepping out of the shower implicate nothing more than negligence.  He expressly, if briefly, alleges that his fall from the shower chair resulted

---

[1] *See generally Daniels v. Williams*, 474 U.S. 327 (1986) (prison official's negligence in failing to protect inmate from harm does not give rise to a cause of action under § 1983).

because it was "improperly installed." Doc. 1 at 15. None of these allegations supports a constitutional claim. *Farmer v. Brennan*, 511 U.S. 825, 836-40 (1994); *see also, e.g., Morris-el v. United States*, 2020 WL 6937470, at *4 (S.D. Ga. Nov. 2, 2020) ("slip and fall accidents do not give rise to federal causes of action" (internal quotations and citations omitted)).

To assert a § 1983 claim, Roach must allege not only that he was exposed to "a substantial risk of serious harm" but also that the responsible prison officials acted with "deliberate indifference" to that *known* risk. *Farmer*, 511 U.S. at 834. *Farmer* defined deliberate indifference in terms of the subjective recklessness used in the criminal law: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Negligence, which arises when a person fails to live up to an *objective*, reasonable-man standard of conduct, falls far short of this *subjective* standard. *See*

*Goebert v. Lee Cty.*, 510 F.3d 1312, 1326-27 (11th Cir. 2007) (explaining that subjective component of deliberate indifference requires more than even gross negligence).

At most, Roach's allegations about his multiple falls suggest that some prison staff were negligent. *Cf. LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment" (internal quotes and cite omitted)). More to the point, his allegations fall far short of asserting the level of culpability required by the Eighth Amendment—actual, subjective awareness of a substantial risk to inmate health or safety. *Farmer*, 511 U.S. at 840 ("Eighth Amendment liability requires consciousness of a risk"); *id.* at 841 ("deliberate indifference serves under the Eighth Amendment to ensure that only inflictions of punishment carry liability"); *id.* at 842 ("a prison official who was unaware of a substantial risk of harm to an inmate may . . . [not] be held liable under the Eighth Amendment [even] if the risk was obvious and a reasonable

prison official would have noticed it").  His allegations concerning his accidental falls, therefore, fail to state any claim.

Even if the falls themselves do not state any viable § 1983 claim, he might allege that officials were deliberately indifferent to his serious medical needs after he fell.  Prison officials' deliberate indifference to "an inmate's serious medical needs violates the inmate's right to be free from cruel and unusual punishment." *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)); *see also Farmer,* 511 U.S. at 832-33 (although prison conditions may be restrictive and harsh, prison officials must provide, *inter alia*, necessary medical care).  This requires that (1) the prisoner suffered a sufficiently serious medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury.   *Goebert*, 510 F.3d at 1326. Whether a serious medical need existed is an objective standard.  *Milton v. Turner*, 445 F. App'x 159, 161-62 (11th Cir. 2011).  To allege deliberate indifference, a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010) (internal quotations and citation omitted).  Each defendant is

"judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). A prisoner's mere disagreement with the type of medical treatment he receives is insufficient to allege deliberate indifference. *See, e.g., Hamm v. DeKalb Cnty.,* 774 F.2d 1567, 1575 (11th Cir. 1985). Even if the treatment an inmate receives was negligent, that's not enough to support a § 1983 claim. *See, e.g. Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing *Estelle*, 429 U.S. at 106) ("Mere incidents of [medical] negligence or malpractice do not rise to the level of constitutional violations.").

Roach's allegations concerning "knots" and other generalized injuries resulting from the falls do not allege a serious medical need. *See Young v. Holmes,* 2009 WL 2914188, at *3 (S.D. Ga. Sept. 3, 2009) (allegations that prisoner "suffered head and back injuries" insufficient to state a serious medical need); *see also Martin v. City of New York*, 2012 WL 1392648, at *9 (S.D.N.Y. Apr. 20, 2012) ("bodily injuries sustained from a slip-and-fall on a wet floor simply do not rise to the level of a constitutional violation"). To the extent that he might allege the injuries suffered when he fell and suffered a "seizure" were more serious, based on the nurse's subsequent statement, he expressly alleges that she stated

9

she was unaware of those injuries.  *See* doc. 1 at 10.  He has, therefore, failed to satisfy either the objective or the subjective component of a deliberate-indifference claim arising from those circumstances.

Roach's allegations concerning the response to his "seizure" merit separate analysis.  Allegations that a prisoner suffered a "seizure" are sufficient to allege an objectively serious medical need.  *See, e.g., Griffin v. Mortier*, 837 F. App'x 166, 171 (4th Cir. 2020) (allegations that plaintiff suffered "a seizure and a head injury resulting from that seizure," were sufficient to allege serious medical needs).  Roach alleges that when he began to suffer symptoms of a seizure, immediately after the fall, he was "transported to [the] facility's clinic[, and] . . . briefly examined."  Doc. 1 at 7.  It is, therefore, not clear whether any defendant was deliberately indifferent to the seizure, in the first instance.  It is also not clear whether medical staff determined that Roach was not suffering from a seizure.  If they did, nonmedical personnel were entitled to rely on that medical determination.  *See, e.g., Moon v. Reviere*, 2021 WL 3700714, at *10 (S.D. Ga. Aug. 19, 2021) ("It is widely held that non-medical prison personnel are generally entitled to rely on the expertise of the medical staff and are not required to second-guess the medical staff's judgment regarding an

inmate's care." (internal quotation marks, alterations, and citation omitted)). His conclusory allegation that "physicians failed to adequately treat [him] for signs of concussions, stroke, or seizure . . .," does not, on its face, allege anything more than his disagreement with the medical care provided. Roach's allegations concerning the response to his "seizure," are, therefore, not sufficiently clear. *Cf. Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) ("facts that are merely consistent with a defendant's liability, . . . stop[ ] short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks and citation omitted)).

Roach's allegations that he was denied access to medication are also insufficient. "[P]rison officials act with deliberate indifference if they knowingly interfere with treatment prescribed by a physician." *Qamar v. C.I.A.*, 489 F. App'x 393, 396 (11th Cir. 2012) (citing *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988)). Roach's allegations concerning officers' refusal to provide "breathing treatments" and "PM medication," and failure to provide food with his medication all suggest interference, but fail to allege that the medications were prescribed by a physician or that the specific circumstances, like the requirement of food when taking the medication, were physician-prescribed. The claims are,

therefore, too vague to state a claim.  *Cf. Vass v. Whittingham*, 2022 WL 12435078, at *5 (M.D. Ga. Oct. 21, 2022) (recommending dismissal of claims related to failure to provide "breathing treatments" as too vague).

Roach's allegations concerning denial of a "medical mat," "therapy" for his back pain, and the apparently insufficient response to his complaints about "pains" and "numbness in [his] legs" fail to state any deliberate-indifference claims.  Allegations of "pain," without further specification, do not allege a serious medical need.  *See, e.g., Cargill v. House*, 2019 WL 1757554, at *4 (N.D. Ala. Mar. 27, 2019) ("Without more, a prisoner's subjective complaints of pain . . . do not plausibly suggest a serious medical need," and collecting cases).  "Leg numbness" may rise to the level of a serious medical need, but usually only in the context of other conditions or symptoms.  *See Lowe v. Green*, 2019 WL 6481428, at *5 (N.D. Ala. Oct. 17, 2019).  Whether Roach's complaints of numbness satisfied the objective component of his claim, he does not allege that any particular defendant was deliberately indifferent to his "complaints."  *See* doc. 1 at 15.  Similarly, even assuming the "medical mat" or "therapy" relates to a serious need or was prescribed by a physician, Roach does not

allege who denied his request or what that individual knew.  *See, e.g., Sawyers v. West*, 2018 WL 7288532, at *8 (W.D. Okla. Dec. 21, 2018).

Finally, Roach's allegation that he was forced to participate in "work release . . . while in pain from previous incidents," is not sufficient to state a deliberate-indifference claim.  As discussed above, the allegation that Roach was in "pain," does not allege that he suffered an objectively serious medical need.  Moreover, his allegation that the "floor officer" threatened him with "worst consequences" if he did not comply with instructions, *see* doc. 1 at 15, is not sufficient to allege that that individual was deliberately indifferent.

Roach's allegations concerning the conditions of his confinement are analyzed under a different, but related, deliberate-indifference rubric.  The Eighth Amendment's prohibition on "cruel and unusual punishment" generally applies in circumstances where individuals are subject to unconstitutional conditions of confinement.  *See, e.g., Rhodes v. Chapman*, 452 U.S. 337, 345-47 (1981).  Claims that prison conditions violate the Eighth Amendment, whether immediately or by creating an unreasonable risk, require the allegation of both an objectively serious condition and a defendant's deliberate indifference to that condition.  *See,*

*e.g., Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (claim based on risk of future harm requires objective showing of "substantial risk of serious harm," "the defendants' deliberate indifference to that risk," and causation); *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010) (discussing "two-prong showing" required for Eighth Amendment claims challenging conditions of confinement); *Ellis v. Pierce Cnty, Ga.*, 415 F. App'x 215, 217 (11th Cir. 2011) ("A pretrial detainee in a conditions-of-confinement suit must satisfy both an objective and a subjective inquiry into the conduct of the defendant prison officials."). "[O]nly those deprivations denying the minimal civilized measure of life's necessities, [cit.] are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks and citations omitted).

The conditions that Roach complains of do not obviously rise to the level of constitutional violations. He alleges that he was confined in a cell which the toilet overflowed and another which contained feces. *See* doc. 1 at 15-16. Confinement in a cell exposing an inmate to "dried urine, blood, and feces," for limited periods does not violate the Constitution. *Anderson v. Chapman*, 2013 WL 4495827, at *2 (M.D. Ga. Aug. 20, 2013);

*see also, id.* at *5 (recognizing that the conditions "were deeply unpleasant, [but] none . . . appears to have been so grave that it violates contemporary standards of decency . . . (internal quotation marks and citation omitted)). Similarly, "a toilet which . . . occasionally overflows is unpleasant but not necessarily unconstitutional." *Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010). Prolonged or egregious exposure to unsanitary conditions can, however, violate the Eighth Amendment. *See, e.g., Taylor v. Riojas*, ___ U.S. ___, 141 S. Ct. 52, 53-54 (2020). Finally, Roach's allegation that one of his cells had "no running water," is not sufficient to allege an Eighth Amendment violation. *See, e.g., Collier v. Adams*, 602 F. App'x 850, 852 (3d Cir. 2015) ("deprivation of running water in [prisoner's] cell for 77 hours," was not objectively serious, where prisoner had other access to fluids and was monitored); *see also Stewart v. Wright*, 101 F.3d 704 (Table), 1996 WL 665978, at *1 (7th Cir. 1996) ("[T]he conditions of a dry cell do not rise to the level of a constitutional deprivation."). Those allegations, therefore, fail to state a claim that the conditions of Roach's confinement violate the Constitution.

Roach also contends that his First Amendment rights were violated. *See* doc. 1 at 10. A number of his allegations potentially

implicate his First Amendment rights, but none state a claim. The First Amendment right to access the courts does not automatically translate into a right to a law library or other forms of legal assistance. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996). In order to state such a claim, the interference "must have frustrated or impeded [the plaintiff's] efforts to pursue a nonfrivolous legal claim." *Bass v. Singletary*, 143 F.3d 1442, 1445 (11th Cir. 1998). Roach does not allege that officers' refusal to allow him to contact a lawyer "frustrated [his] presentation of a direct appeal from [his] conviction[ ], a habeas petition, or a civil rights action." *Id.* at 1446. His allegation concerning the "postcard" is too vague to state a claim. *See* doc. 1 at 16. To the extent that he alleges that he was prevented from filing an administrative grievance, such interference is not actionable. *See, e.g., Thomas v. Warner*, 237 F. App'x 435, 437-38 (11th Cir. 2007) ("[A] prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure."). His allegation that he is being denied access to "store order sheets," *see* doc. 1 at 18, is also insufficient, independent of a viable access-to-courts claim. *See, e.g., Turbeville v. Ray*, 2018 WL 3574935, at *4 (E.D. Tenn. July 25, 2018) ("[A]s a general matter, there is no constitutional right of access to a

prison commissary[,]" and collecting cases).  Although none of Roach's allegations concerning his access to legal assistance or the courts is sufficient to state a claim, he might be able to amend his allegations to state such a claim.

Finally, Roach contends that he was subjected to excessive force. *See* doc. 1 at 10.  It is well-settled that "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (internal quotation marks, alteration, and citation omitted); *see also Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019).  "In considering an Eighth Amendment excessive force claim, [the court] must consider both a subjective and an objective component: (1) whether the officials acted with a sufficiently culpable state of mind, and (2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Johnson v. Moody*, 206 F. App'x 880, 883 (11th Cir. 2006) (internal quotation marks, alterations, and citation omitted).  The Court struggles, however, to discern allegations that Roach was subjected to force at all.  The closest he comes to such an allegation is that, when he was transported from one cell to another by wheelchair, an officer

"[u]nderhandedly grabbed the wheelchair, throwing [him] into the . . . cell." Doc. 1 at 8. Similar allegations have been found insufficient to allege excessive force. *See Billingsley v. Daniels*, 2019 WL 4439575, at *11 (M.D. Ala. Aug. 2, 2019) (allegation that "Defendant . . . grabbed his wheelchair and . . . cause[d] plaintiff to be thrown or ejected from the [wheelchair] . . ." failed to establish a claim for excessive force). Like his allegations of First Amendment violations, Roach may be able to clarify his allegations to assert an excessive-force claim.

In summary, Roach's Complaint fails to state any claim upon which relief may be granted. Since his claims against Liberty County Jail and defendants McEady and Krumnow, in their supervisory capacities, are not amendable, they should be **DISMISSED**. Despite his Complaint's failure to state a viable claim, "when a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015). Accordingly, Roach is **DIRECTED** to submit an Amended Complaint no later than February 10, 2023. To facilitate his preparation of the Amended Complaint, the Clerk is **DIRECTED** to send him a blank Form Pro Se

14 (Complaint for Violation of Civil Rights (Prisoner)).  Roach is advised that his amended complaint will supersede the current operative complaint and therefore must be complete in itself.  *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982).  Roach is further advised that failure to timely submit his amended complaint may result in dismissal for failure to obey a court order or failure to prosecute.  *See* Fed. R. Civ. P. 41(b).

Finally, the Court must assess Roach's filing fee.  *See* 28 U.S.C. § 1915(b).  Plaintiff's prisoner trust fund account statement reflects average monthly deposits of $167.33.  Doc. 5 at 1.  Based upon his furnished information, he owes an initial partial filing fee of $33.47.  *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula).  His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full.  In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's

new custodian.  The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order. [2]

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are

---

[2]  The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required.  In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 19th day of January, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA